UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARINE DEVELOPMENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-0681-CVE-FHM |
| ) | |
| HUFFMAN CONSTRUCTION, LLC and ) | |
| WESTERN SURETY COMPANY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Huffman Construction, LLC's Motion to Dismiss and Brief in Support (Dkt. # 15) and defendant Western Surety Company's (Western Surety) Motion to Stay Proceedings and to Compel Arbitration (Dkt. ## 21, 22). The parties do not dispute that plaintiff Marine Development, Inc. (Marine) and defendant Huffman Construction, LLC (Huffman) executed a subcontract containing an arbitration agreement. Western Surety argues that Marine's claims against it are derivative of Marine's claims against Huffman, and Western Surety claims that it is entitled to enforce the arbitration agreement in the same manner as Huffman. Marine responds that the arbitration agreement includes a carve-out provision that exempts its claims against Western Surety from the scope of the arbitration agreement and it never agreed to arbitrate claims arising under the payment bond issued by Western Surety.

Huffman was the general contractor on a construction project to expand a water treatment plant in Sequoyah County, Oklahoma, and Huffman hired Marine as a subcontractor to perform certain work. Dkt. # 2-1, at 2. Western Surety issued a payment bond in the amount of $11,097,000 for the project. Id. Marine claims that it provided labor and materials for the project pursuant to a

subcontract with Huffman, and Marine alleges that it sought payment in the amount of $233,504 for its work. Id. Huffman apparently did not pay Marine and, on August 15, 2019, Marine made a claim against Western Surety for payment under the bond. Id. Western Surety acknowledged receipt of Marine's claim and requested additional information. Id. The petition does not allege whether Marine provided the additional information requested by Western Surety. By October 2, 2019, Marine had not been paid by Huffman or Western Surety, and Marine made a written demand for payment through an attorney. Id. Marine alleges that Huffman and Western Surety have still not paid Marine for its work and, on November 15, 2019, Marine filed this case in Tulsa County District Court. Marine alleges claims of breach of contract and unjust enrichment against Huffman and claims of breach of contract and bad faith against Western Surety.

Huffman and Western Surety filed motions asking the Court to enforce an arbitration agreement contained in the subcontract between Huffman and Marine. Dkt. ## 15, 21, 22. Article 11 of the subcontract concerns the dispute resolution procedures that would be used in the event of a dispute between the contractor and subcontractor. Dkt. # 21-1, at 24-25. If the parties are unable to resolve their dispute by informal discussion or mediation, the parties agreed to submit their dispute to binding arbitration "using the current Construction Industry Arbitration Rules of the American Arbitration Association or the parties may mutually agree to select another set of arbitration rules." Id. at 25. Section 11.2 of the subcontract states that "[n]othing in this Article shall limit any right or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds." Id. at 24. However, the parties also agreed that "all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding." Id. at 24. Marine has filed notice (Dkt. # 27) that it has filed a demand for arbitration against Huffman,

and Huffman's motion (Dkt. # 15) to compel arbitration is moot. Marine argues that it is not required to submit its claims against Western Surety to arbitration based on the "carve-out" provision of the arbitration agreement, and Marine claims that the provision requiring joinder of all parties in a single proceeding applies only in disputes involving the "Contractor" and the "Owner." Dkt. # 23, at 3.

The Federal Arbitration Act (FAA) represents a strong public policy in favor of arbitration, and states that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010); Vaden v. Discover Bank, 556 U.S. 49, 58 (2009). The FAA "requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1514 (10th Cir. 1995). Agreements that require arbitration of statutory claims are generally enforceable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Jacks v. CMH Homes, Inc., 856 F.3d 1301, 1305 (10th Cir. 2017). "Generally, courts 'should apply ordinary state-law principles that govern the formation of contracts' to determine whether a party has agreed to arbitrate a dispute." Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475-76 (10th Cir. 2006). The consideration of state law is limited to principles of contract law concerning the enforceability of contracts in general, and state law cannot displace the strong federal policy in favor of arbitration of disputes. Nitro-Lift Technologies, LLC v. Howard, 568 U.S. 17, 20-21 (2012); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009).

A motion to compel arbitration calls for a two-step inquiry concerning the arbitrability of the dispute: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the scope of that agreement. AT & T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986). Before reaching the issue of arbitrability, the Court will initially consider whether Western Surety, a non-signatory, can enforce against Marine the arbitration agreement in the subcontract between Huffman and Marine. While not expressly stated in the FAA, federal courts have recognized that there are bases under which a non-signatory may compel arbitration of claims brought by a signatory to an arbitration agreement. Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 127 (2d Cir. 2010); Gibson v. Wal-Mart Stores, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999). In Arthur Andersen, the Supreme Court stated that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" and reversed the Sixth Circuit's categorical rejection of a request by a non-party to an arbitration agreement for a stay under § 3 of the FAA. Id. at 1902. The Oklahoma Supreme Court has recognized five bases for binding a non-signatory to an arbitration agreement:

> 1) incorporation by reference, when a party has entered into a separate contractual relationship with the non-signatory incorporating the existing arbitration clause; 2) assumption, when subsequent conduct indicates nonsignatory has assumed the obligation to arbitrate; 3) agency, when traditional principles of agency law may bind a nonsignatory to an arbitration agreement; 4) veil-piercing/alter ego, when the corporate relationship between a parent and its subsidiary are sufficiently close to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other, such as, to prevent or other wrong or when a parent dominates and controls a subsidiary; and 5) estoppel, when the claims are integrally related to the contract containing the arbitration clause.

Carter v. Schuster, 227 P.3d 149, 153 (Okla. 2009).

For the purpose of this Opinion and Order, the Court will assume that Western Surety can seek to enforce the arbitration agreement in the same manner as Huffman. Federal district courts in Oklahoma have permitted a nonsignatory defendant to enforce an arbitration agreement against a plaintiff who voluntarily signed the contract containing the agreement. Hardrick v. David Stanley Dodge, LLC, 2015 WL 13573979 (W.D. Okla. June 4, 2015) (nonsignatory defendant can "embrace" a contract containing an arbitration agreement when the plaintiff received a benefit under the contract and asserts claims arising under the contract); Global Client Solutions, LLC v. Fluid Trade, Inc., 2010 WL 2690373 (N.D. Okla. July 1, 2010) (finding that nonsignatory can compel a party to the arbitration agreement to arbitrate in some circumstances). Western Surety has cited authority from other jurisdictions that a surety can seek to enforce an arbitration agreement between a general contractor and a subcontract, and Marine does not contest the more general argument asserted by Western that this is permissible under some circumstances. See Rock Roofing, LLC v. Travelers Cas. and Surety Co. of America, 2019 WL 4418918 (D.N.M. Sep. 16, 2019); Blumenthal-Kahn Elec. Ltd. v American Home Assur. Co., 236 F. Supp. 2d 575 (E.D. Va. 2002). Marine does contend that the arbitration agreement expressly excludes claims by a subcontractor against the surety to recover on a payment bond, and the Court will consider this as an argument that Marine's claims against Western Surety fall outside the scope of the arbitration agreement. Western Surety has made a colorable argument that it can seek to enforce the arbitration agreement contained in the subcontract, and the Court will proceed with the two-step inquiry to determine if the arbitration agreement is enforceable as to Marine's claims against Western Surety.

Marine does not dispute that the arbitration agreement is generally valid and enforceable, but Marine does contend that its claims against Western Surety were specifically excluded from the

scope of the arbitration agreement. Marine argues that there is a "carve-out" provision stating that "[n]othing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien law or payment bonds." Dkt. # 21-1, at 24. Western Surety responds that it is "entitled to assert any and all defenses possessed by its principal (Huffman)," and Marine has agreed to arbitrate all claims it may have against Huffman. Dkt. # 26, at 1. In support of this argument, Western Surety cites United States ex rel. Tanner v. Daco Construction, Inc., 38 F. Supp. 2d 1299 (N.D. Okla. 1999), for the proposition that a subcontractor should not be permitted to circumvent an agreement to arbitrate claims against the general contractor merely by naming the surety as a party. However, Western Surety ignores another key aspect of Daco, which is that the court found that subcontractor had not agreed to arbitrate its claims against the surety in light of a provision that is very similar to the "carve-out" provision cited by Marine. The subcontract in Daco contained a broad arbitration provision as to controversies between the general contractor and the subcontractor, but the arbitration provision specifically provided that it "shall not be deemed a limitation of rights or remedies which the Subcontractor may have under Federal law, under state mechanics' lien laws, or under applicable labor or material payment bonds unless such rights or remedies are expressly waived by the Subcontractor." Id. at 1300. The court construed this provision as an express exclusion of certain claims from the arbitration agreement, and denied the motion to compel arbitration as to the claims listed in the provision. Id. at 1302-03. In this case, the parties entered a subcontract containing an arbitration agreement governing claims between the general contractor and subcontractor, but the parties agreed that "[n]othing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien law or payment bonds." Dkt. # 21-1, at 24. There is no

significant difference between the contractual language in this case and Daco, and the Court finds that Marine did not agree to arbitrate any claims it may have against the surety. The parties specifically excluded claims against the surety from the scope of the arbitration agreement, and the cases cited by Western Surety from other jurisdictions concerning a surety's right to compel arbitration are distinguishable in light of the specific language of the subcontract in this case. The Court notes the "multiparty"provision of the arbitration agreement, but finds that this cannot be used to compel arbitration of claims that are expressly excluded from the arbitration agreement. See Dkt. # 21-1, at 24. Western Surety's motion to compel arbitration (Dkt. # 21) is denied on the ground that Marine's claims against Western Surety are excluded from the scope of the arbitration agreement.

Western Surety asks the Court to stay Marine's claims against it until the arbitration between Huffman and Marine is resolved, because it would be a waste of judicial resources to litigate the same underlying issue in separate forums and there are preclusion issues that cannot be resolved until arbitration is complete. Dkt. # 26. Marine responds that it has asserted factually and legally distinguishable claims against Huffman and Western Surety, and Marine asks the Court to allow this case to proceed simultaneously with arbitration. The Court has reviewed the petition (Dkt. # 2-1) and can find no significant factual distinctions between Marine's claims against Huffman and Western Surety. The key issue underlying all of Marine's claims is the alleged refusal of Huffman and Marine to pay the amount sought by Marine, and this is true whether the legal theory is breach of contract, unjust enrichment, or bad faith.[1] While it is possible to have a bad faith claim based on a failure to investigate, Marine makes no specific allegations supporting such a claim and the

---

[1] The Court is not making a finding that Oklahoma law recognizes a bad faith claim against a surety, and Marine has cited no authority suggesting that such a claim actually exists.

evidence provided by Marine shows that Western Surety promptly made an offer to settle Marine's claims under the payment bond.  Dkt. # 31-1 (e-mails provided by Marine showing that Western Surety made an offer in October 2019 to resolve Marine's claim under the payment bond for an amount slightly less than that full amount of Marine's invoice).  Marine agreed to arbitrate the merits of its contractual dispute with Huffman and allowing Marine to proceed with its claims against Western Surety would render the arbitration agreement meaningless.  Daco, 38 F. Supp. 2d at 1306.  The Court will stay Marine's claims against Western Surety pending the outcome of arbitration proceeding.

**IT IS THEREFORE ORDERED** that Western Surety's motion to compel arbitration (Dkt. # 21) is **denied**.

**IT IS FURTHER ORDERED** that Western Surety's motion to stay (Dkt. # 22) is **granted**, and Marine's claims against Western Surety are **stayed** pending the completion of arbitration between Huffman and Marine.  The parties shall file notice within 14 days of the completion of arbitration between Huffman and Marine.

**IT IS FURTHER ORDERED** that Defendant Huffman Construction, LLC's Motion to Dismiss and Brief in Support (Dkt. # 15) is **moot**.

**IT IS FURTHER ORDERED** that an administrative closing order will be entered.

**DATED** this 1st day of May, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE